# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARVEY HERRING III, | 1:05-cv-00079-LJO-SMS-PC |
| Plaintiff, | ORDER DENYING NON-PARTY CDCR'S MOTION TO QUASH; GRANTING NON-PARTY CDCR'S REQUEST FOR PROTECTIVE ORDER; TAKING NON-PARTY CDCR'S REQUEST FOR *IN CAMERA* REVIEW UNDER SUBMISSION; AND OVERRULING DEFENDANTS' OBJECTIONS |
| v. | |
| MIKE CLARK, et al., | |
| Defendants. | |
| | (Docs. 87, 88) |

## I.   RELEVANT PROCEDURAL HISTORY

Harvey Herring, III ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint commencing this action on January 19, 2005. (Doc. 1.)[1] This action proceeds against Defendants Correctional Officer ("C/O") Mike Clark, Sergeant ("Sgt.") Jack L. Hill, C/O Roger Lowder, C/O Alejandro Ramirez, C/O Kenneth J. Jiminez, C/O John Wheeler, Sgt. Kevin Curtiss, C/O Ernesto Diaz, and C/O M. D. McAlister ("Defendants")[2] for use of excessive

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

[2] On September 13, 2006, the Court dismissed Plaintiff's Eighth Amendment medical claim against Defendants Hill, Lowder, and MTA Flora Schumacher; the assault and battery claim against Defendant Schumacher; and the negligence claim against all Defendants for failure to state a claim. (Docs. 18, 21, 25.) On February 15, 2007, Defendant Darlene Rodriguez's motion to be dismissed from this action was granted. (Docs. 46, 52, 53.)

physical force in violation of the Eighth Amendment and assault and battery[3] based on an incident which occurred on July 30, 2003 at California Substance Abuse Treatment Facility ("SATF"). (Id.)

On September 7, 2007 and October 18, 2007, Plaintiff filed requests for a subpoena duces tecum to issue on his behalf. (Docs. 62, 63.) On January 8, 2008, these requests were denied with leave to submit a new request providing further information. (Doc. 65.) On May 20, 2008, Plaintiff renewed his request and provided further information. (Doc. 72.) This request was granted and, on October 14, 2008, a subpoena duces tecum ("the SDT") issued to third party, SATF Warden Ken Clark ("Warden Clark"). (Docs. 83, 85.) The SDT commanded production of documents for Plaintiff's inspection at the California State Prison, Sacramento, on December 8, 2008 at 10:00 a.m. (Doc. 85-2.) On December 5, 2008, non-party California Department of Corrections and Rehabilitation ("CDCR") filed a motion to quash the SDT (Doc. 87.) On December 5, 2008, Defendants Hill, Lowder, Ramirez, Jiminez, Wheeler, Curtiss, Diaz, McAlister, and Rodriguez filed objections to the SDT. (Doc. 88.) On December 10, 2008, Defendant Clark joined CDCR's motion to quash. (Doc. 89.) On January 9, 2009, Plaintiff filed an opposition to the motion, CDCR filed a reply on January 16, 2009. (Docs. 94, 95.) The motion to quash and objections are now before this Court.

**II.     Discovery via Federal Rule of Civil Procedure 45**

Federal Rule of Civil Procedure[4] 34 governs discovery of designated documents, electronically stored information, and designated tangible things subject to the provisions of Rule 26(b). Meeks v. Parsons, 2009 WL 3003718, *2 (E.D. Cal. 2009) (*citing* Fahey v. United States, 18 F.R.D. 231, 233 (S.D.N.Y. 1955). Rule 26(b)(1) establishes the scope of discovery, stating in pertinent part:

---

[3] Plaintiff alleges that his rights were violated in an incident which occurred on July 30, 2003, wherein Plaintiff alleges that Defendant Clark slammed his Plaintiff's left hand in the food tray slot causing injury, then, when Plaintiff did not enter the cage at the yard clinic, Defendants Jiminez, Hill, Lowder, Ramirez, Wheeler, and Curtiss assaulted Plaintiff. (Doc.

[4] Federal Rules of Civil Procedure will be referred hereinafter as "Rule **." All references to any codes and/or statutes other than this set of rules will be specified.

2

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Accordingly, under Rule 34, the test for admissibility is the relevance of the requested material or information. Id., (citing Weahkee v. Norton, 621 F.2d 1080, 1082 (10th Cir.1980); White v. Jaegerman, 51 F.R.D. 161, 162 (S.D. N.Y. 1970); Ceramic Corp. of Amer. v. Inka Maritime Corp., Inc., 163 F.R.D. 584 (C.D. Cal. 1995)).

"The law [of discovery] begins with the presumption that the public is entitled to every person's evidence." Richards of Rockford, Inc. v. Pacific Gas & Elec. Co., 71 F.R.D. 388, 389 (N.D. Cal. 1976). A nonparty may be compelled to produce documents and tangible things via Rule 45 subpoena. Fed. R. Civ. P. 34(c). Assuming that a subpoena is properly constituted and served, Rule 45 requires the subpoena's recipient to produce the requested information and materials, provided the issuing party "take[s] reasonable steps to avoid imposing undue burden or expense." Fed. R. Civ. P. 45(c)(1) and (d)(1). The recipient may object to all or part of a subpoena, or move to quash or modify it. Fed. R. Civ. P. 45(c)(2) and (3).

### III.     MOTION TO QUASH

CDCR and Defendant Clark seek to quash the SDT on the grounds that it: (1) is procedurally deficient for lack of a proof of service and was served on Warden Clark rather than the custodian of records (Doc. 87, Mot. to Quash, pp. 5:14-6:6); (2) is facially overbroad and compliance would cause an undue burden on CDCR (*id.*, at pp. 6:7-6:14); (3) the information sought is protected by the official information privilege (*id.*, at pp. 7:7-8:18); (4) release of the information sought would violate individual privacy rights (*id.*, at pp. 10:3-10:19); (5) the information sought is privileged under the California Constitution, the California Evidence Code, the California Government Code, the California Penal Code, and section 3321 of Title 15 of the California Code of Regulations (*id.*, at pp. 8:19-12:2); (6) any documents released should be submitted for an *in camera* review (*id.*, at pp. 9:18-10:2); and (7) a protective order should issue

as to any document(s) ultimately released. (*id.*, at pp. 12:3-12:16).  Defendants' objections raise some[5] of the same issues such that analysis of an issue herein is applicable to both the motion to quash and the objections.

### A.     Procedural Deficiencies

CDCR argues that the SDT is procedurally deficient because it fails to include an executed proof of service and purports to serve the Warden of SATF instead of the true custodian of the records sought.  Defendants argue that while they did receive notice of the SDT from the Court's CM/ECF posting, this did not relieve Plaintiff of his duty to serve the parties and the copy on CM/ECF lacked an executed proof of service.

#### 1.     Proof of Service

CDCR argues that the SDT is deficient because it was not accompanied by a proof of service showing compliance with the notice requirements of Rule 45(b) and Local Rule 250.5.[6]

Rule 45 governs subpoenas duces tecum for the production of documents.  "If a subpoena commands the production of documents . . . before trial, then before it is served, a notice must be served on each party."  Fed. R. Civ. P. 45(b)(1).  A subpoena duces tecum directed to a party or non-party must be served on all parties to the action and on the non-party.  L.R. 250.5.  "Proving service, when necessary, requires filing with the issuing court a statement showing the date and manner of service and the names of the persons served."  Fed. R. Civ. P. 45(b)(4).  "The purpose of such notice is to afford other parties an opportunity to object to the production or inspection or to serve a demand for additional documents or things."  Fed. R. Civ. P. 45, Advisory Committee Notes, 1991.

CDCR argues that they cannot determine if the parties were properly served because the proof of service attached to the SDT was blank.  They also argue that any production of documents by CDCR may potentially injure a party's opportunity to object.  Plaintiff responds in

---

[5] Defendants' objections raise neither all of the same, nor any issues beyond those raised in the motion to quash.

[6] CDCR cites Local Rule "45-250(c)" which, subsequent to their filing of the motion to quash, was renumbered to "250.5."

his opposition that the SDT should not be quashed for failure to serve an executed proof of service because he followed the Court's instructions when submitting information required for issuance of the SDT, and the Court directed the Clerk to serve a copy of the SDT on all parties. In reply, CDCR again argues that only a blank proof of service form accompanied the SDT and that Plaintiff's opposition should be disregarded because it was filed fourteen days after the deadline to file any such opposition.

With regard to CDCR's claim that the opposition was filed late, Local Rule 230(l), which governs motions in prisoner cases, provides in part:

> Opposition, if any, to the granting of the motion shall be served and filed by the responding party not more than twenty-one (21),days after the date of service of [a] motion. . . . The moving party may, not more than seven (7) days after the opposition is served, serve and file a reply to the opposition.

L.R. 230(l).

CDCR's motion to quash was filed and served on December 5, 2008. (Doc. 87.) Therefore, under Local Rule 230(l), Plaintiff's opposition was due twenty-one (21) days later, on December 26, 2008. Plaintiff placed his opposition with prison staff for mailing[7] on January 6, 2009. (Doc. 94.) Clearly Plaintiff's opposition was untimely. However, CDCR's reply was also untimely as Plaintiff's opposition was served on January 6, 2009, resulting in a deadline of January 18, 2009, for CDCR to file and serve a reply. Although CDCR's reply was timely filed, a copy was not served on Plaintiff until one day after the deadline. (Docs. 95, 96.) It would be inapposite to grant CDCR's request to disregard Plaintiff's opposition as untimely without also disregarding the request as untimely itself. Accordingly, CDCR's request that Plaintiff's opposition be disregarded is denied.

CDCR also argues that, because they did not receive a completed proof of service with the SDT, they cannot determine if the proper parties were served. Likewise, Defendants' object that even though they received a copy of the SDT via the Court's electronic filing system, this

---

[7] Documents from a prisoner pro se litigant are deemed served on the date the prisoner "delivered the notice to prison authorities for forwarding to the [d]istrict [c]ourt." Houston v. Lack, 487 U.S. 266, 270 (1988) (addressing a pro se prisoner's notice of appeal). The Ninth Circuit has held that the Houston v. Lack rule applies whenever the prisoner has utilized an internal prison mail system and the record allows the court to determine the date on which the filing was turned over to prison authorities. Caldwell v. Amend, 30 F.3d 1199, 1202 (9th Cir. 1994).

did not relieve Plaintiff of his duty to serve the parties.  Yet, Plaintiff followed directions given to him by the Court.  Even if it is assumed that Plaintiff failed to properly serve notice on Defendants, they did receive notice of the SDT via the court's electronic filing system before it was served on CDCR.  (*See* Doc. 85.)

CDCR's argument that any production of documents under the SDT may potentially injure a party's opportunity to object is likewise unavailing.  No harm has been shown particularly since no documents have been produced in response to the SDT, Defendant Clark joined CDCR's motion to quash on December 10, 2008, and the other Defendants filed objections to the SDT on December 5, 2008.  Such harmless error does not provide good cause to grant CDCR's motion to quash the SDT.  Defendants' objections based thereon are likewise overruled.

### 2. **Warden vs. Custodian of Records**

CDCR argues that the SDT should be quashed because Plaintiff served Warden Clark rather than the "custodian of records" at SATF.  CDCR argues that Warden Clark is not the custodian of records at SATF.  Although acknowledging that the Warden is the head authority at his facility, CDCR asserts he is not the custodian of records and does not maintain or control the documents requested by Plaintiff.  CDCR suggests that the SDT should have been directed either to the prison facility itself or to the proper custodian of records.  In support of their argument, CDCR submits a declaration of a SATF litigation coordinator, Johanna Cordova, who states, "I am aware that Warden Ken Clark would not be the custodian of any potentially responsive records." (Doc. 87, Cordova Decl., ¶ 3.)  CDCR cites an Eleventh Circuit case, Ariel v. Jones, 693 F.2d 1058,1060 (11th Cir. 1982), to state that a subpoena must be served on a nonparty who has "control" of the documents requested.

Plaintiff responds that Warden Clark is the head authority at SATF, is in charge of the documents requested, and has primary control of all departments and operations within the institution.  Plaintiff maintains that any request to the "facility itself" would be the same as a request directed to the Warden, because he is the head/representative of that facility.  CDCR states that the SDT, as written, appears to request records the Warden would personally maintain

as Warden, and the Warden did not prepare and does not maintain or preserve the records sought in the eight requested items of the SDT.  CDCR also asserts that some of the records requested may not be maintained at the SATF facility.

Rule 45 allows a party to command a person by subpoena to "produce designated documents, electronically stored information, or tangible things *in that person's possession, custody, or control*."  Fed. R. Civ. P. 45(a)(1)(A)(iii) (emphasis added).  A non-party, as well as a party, may be compelled under Rule 45 to produce documents and tangible things or to permit an inspection.  Fed. R. Civ. P. 34(c).  In this Circuit, the legal-control test is the proper standard under Rule 45 for whether subpoenaed documents are in a party's control.  In re Citric Acid Litigation, 191 F.3d 1090, 1107 (9th Cir. 1999).  "Control is defined as the legal right to obtain documents upon demand."  States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO, 870 F.2d 1450, 1452 (9th Cir. 1989).  The party seeking production of documents bears the burden of proving that the opposing party has such control.  Id.  The determination of control is often fact-specific.  Central to each case is the relationship between the party and the person or entity having actual possession of the document.  Estate of Young v. Holmes, 134 F.R.D. 291, 294 (D. Nev. 1991).  The requisite relationship is one where a party can order the person or entity in actual possession of the documents to release them.  Id.  This position of control is usually the result of statute, affiliation, or employment.  Id.; In re Citric Acid Litig., 191 F.3d at 1107 (court cannot order production of documents held by a separate legal entity, where requested party is not in actual possession or custody of the documents).

Further, since a corporation is a distinct legal entity, a party cannot require another party who is an officer or director of a corporation to produce corporate documents other than those he has in his possession or those he has a legal right to obtain on demand.  American Maplan Corp. v. Heilmayr, 203 F.R.D. 499, 501-02 (D.Kan.2001).  Instead, the requesting party must obtain the documents from the corporation by serving a subpoena pursuant to Rule 45.  Id., at 502.  A recipient of a document production request "'cannot furnish only that information within his immediate knowledge or possession; he is under an affirmative duty to seek that information reasonably available to him from his employees, agents, or others subject to his control.'"  Gray v.

Faulkner, 148 F.R.D. 220, 223 (N.D.Ind. 1992) (*quoting* 10A Federal Procedure, Law Ed. § 26:377 at 49 (1988)).

It is undisputed that the Warden is the head authority at SATF. Since CDCR parallels a corporation (rather than an individual) a plaintiff may obtain documents from CDCR by serving a Rule 45 subpoena on an individual within CDCR who either has the desired records in their possession, or the legal right to demand the records. While a warden "in his personal or individual capacity may not have custody of the documents at issue, because 'control' is determined by authority, he has constructive possession, custody, or control." Mitchell v. Adams, 2009 WL 674348 at *9 (E.D. Cal. March 6, 2009). A warden of a state prison within CDCR certainly has the right to demand any records on an inmate within the facility that he oversees. Accordingly, the SDT will not be quashed merely because it was directed to Warden Clark rather than the custodian of records at SATF.

**B.    Privileges**

**1.    State Law**

CDCR argues that personnel files are protected from disclosure under California Evidence Code sections 1040, 1043, 1045, and 1047, California Government Code section 6254, California Penal Code sections 832.5 and 832.7, California Constitution Article I, section 1, and Title 15 of the California Code of Regulations section 3321 since they contain personal and confidential information. (Doc. 87, 10:20-12:2.) However, this civil rights action was instituted in federal court under a federal statute, 42 U.S.C. § 1983, which was enacted particularly to vindicate federal rights against deprivation by state action. *See* Monroe v. Pape, 365 U.S. 167, 180 (1961) *overruled on other grounds by* Monell v. Dept. of Social Services of City of New York, 436 U.S. 658 (1978). "(I)n federal question cases the clear weight of authority and logic supports reference to federal law on the issue of the existence and scope of an asserted privilege." Heathman v. United States District Court, 503 F.2d 1032, 1034 (9th Cir. 1974) (*citing* 2B Barron & Holtzoff, Federal Practice and Procedure (Wright ed. 1961), § 967 at 243; 4 Moore's Federal Practice, § 26.60(7) at 26-255; 8 Wright & Miller, Federal Practice & Procedure, Civil §2016 at 123; Proposed Federal Rules of Evidence, Rules 501-02); *see also* Fed. R. Evid. 501.

Accordingly, arguments that rely on application of California state law are disregarded.

### 2. Federal Law -- Privileges

CDCR argues that information sought in the SDT is protected from production by the federal official information privilege because disclosure would be harmful to the public interest. (Doc. 87, Mot. to Quash, 7:7-8:18.)

With respect to a claim of federal privilege, CDCR has failed to make the required threshold showing. Federal common law recognizes a qualified privilege for official information, also known as the governmental privilege, or state secret privilege. Kerr v. United States District Court for the Northern District of California, 511 F.2d 192, 198 (9th Cir. 1975). The application of the official information privilege is "contingent upon the competing interests of the requesting litigant and subject to disclosure especially where protective measures are taken." Id. Government personnel files are considered official information. *See* Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033 (9th Cir. 1990) (finding city police department personnel files not subject to discovery for general search). To determine whether the information sought is privileged, courts must "weigh the potential benefits of disclosure against the potential disadvantages." Id. at 1033-1034. If the potential disadvantages are greater, the privilege bars discovery. Id. at 1034 (*citing* Jepsen v. Florida Bd. of Regents, 610 F.2d 1379, 1384-85 (5th Cir. 1980). To invoke the official information privilege, "[t]here must be formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." U.S. v. Reynolds, 345 U.S. 1, 7-8 (1953).

Rule 26 (b)(5)(A) provides that when otherwise discoverable information is withheld under the rules on claims that it is privileged, any such claim shall be expressly made and shall describe the nature of the documents, communications, or things not produced or disclosed, in a manner that will enable assessment of the applicability of the privilege or protection without revealing the privileged or protected information itself. In order to assist a court in determining a claim of privilege, a detailed privilege log may be required in conjunction with evidentiary submissions to fill any factual gaps. United States v. Construction Products Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996), *cert. denied*, 519 U.S. 927 (1996); *see also*, Allen v. Woodford,

2007 WL 309485, *4 (E.D. Cal. 2007), *recon. denied*, 2007 WL 841696.  With respect to each document as to which a privilege is claimed, the person claiming the privilege should include in the privilege log the document's general nature and description, including its date, the identity and position of the author, and the identity and position of all addressees and recipients; the present location of the document; and the specific reasons it was withheld, including the privilege invoked and the grounds therefor.  Allen (*citing* Construction Products, 73 F.3d at 473-74, *and* In re Grand Jury Investigation, 974 F.2d 1068, 1071 (9th Cir.1992)).

       A detailed privilege log will allow a case-specific and fact-specific balancing of the interests of law enforcement, privacy interests of police officers or citizens, interests of civil rights plaintiffs, policies that inform the laws, and the needs of the judicial process.  Kelly v. City of San Jose, 114 F.R.D. 653, 667-69 (N.D. Cal. 1987).  The privilege log also must: (1) show that the agency generated or collected the information and maintained its confidentiality; (2) show that the declarant reviewed the material personally; (3) identify a specific governmental or privacy interest that would be threatened by disclosure to Plaintiff; (4) describe how disclosure, subject to a carefully crafted protective order, would create a substantial risk of harm to significant governmental or privacy interests; and (5) assess the extent of the harm that would result from disclosure.  Id. at 670.  It is helpful if the agency can describe alternative means, if any exist, for the plaintiff to acquire the information or its equivalent from other sources.  Id.

       The purpose of the governmental privilege is to protect the governmental decisionmaking process.  *See* NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150-51 (1975); Branch v. Phillips Petroleum Co., 638 F.2d 873, 881-82 (5th Cir. 1981); Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, 40 F.R.D. 318, 324-25 (D.D.C.1966), *aff'd sub nom.* V.E.B. Carl Zeiss, Jena v. Clark, 384 F.2d 979 (D.C.Cir.), cert. denied, 389 U.S. 952 (1967).

> (A)pplication of the official privilege is founded on the belief that there are certain governmental processes related to legal and policy decisions which cannot be carried out effectively if they must be carried out under the public eye.  Government officials would hesitate to offer their candid and conscientious opinions to superiors or co-workers if they knew that their opinions of the moment might be made a matter of public record at some future date.

Branch , 638 F.2d at 881-82.  Thus, this privilege shields from disclosure "intra-governmental

documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Zeiss Stiftung, 40 F.R.D. at 324; *accord* NLRB, 421 U.S. at 150 (*quoting* Zeiss Stifftung); Branch, 638 F.2d at 881 (*quoting* Zeiss Stifung).

Further, there are two important limitations on the executive/governmental privilege doctrine. First, the privilege does not protect communications or reports made after completion of the deliberative process. *See* NLRB, 421 U.S. at 151. Discovery of such material does not jeopardize the decision-making function. *See* id.. Second, the privilege does not prohibit disclosure of factual materials. *See* EPA v. Mink, 410 U.S. 73, 87-88 (1973), superseded by statute on other grounds; Branch, 638 F.2d at 882; EEOC v. Wagner Electric Corp., 9 Empl.Prac.Dec. (CCH) P 9985 (E.D. Mo. 1973); Zeiss Stiftung, 40 F.R.D. at 327. An agency must produce "compiled factual material or purely factual material contained in deliberative memoranda and severable from its context." Mink, 410 U.S. at 87-88; *accord* Branch, 638 F.2d at 882.

Here, CDCR makes general assertions that government personnel files are considered private, investigations at the prison often include confidential conversations, and disclosure of personal or confidential information could threaten the safety of officers and inmates. CDCR's counsel declares that the custodian of records informed him that some of the documents requested by Plaintiff have been designated by CDCR as confidential pursuant to state law. (Doc. 87, Feher Decl, ¶¶ 4, 6.) The declaration of a litigation coordinator is also submitted which states that she is "informed based on [her] communications with other department chairs at [their] facility" that a number of types of documents are considered confidential and should remain as such. (Id., Cordova Decl., ¶ 2.) The litigation coordinator also declares that revelation of any of the requested documents would place staff, inmates, and the institution in danger. (Id., at ¶ 4-8.) CDCR argues that the factors used in Kelly, 114 F.R.D. at 660, favor protection of the documents. (Id., at 7:7-8:18.)

These two declarations are woefully inadequate and are replete with inadmissible hearsay. CDCR offers no evidence that anyone has even looked at, let alone read the particular documents

requested by Plaintiff.[8]  At best, these declarations only generally state that disclosure of identifying information of prison personnel and other inmates could threaten the safety and security of officers, inmates, and the facility.  Further, in his opposition, Plaintiff repeatedly states that he does not desire revelation of any personal or confidential information of any CDCR employee or inmate; rather he only seeks facts directly related to the events alleged in the complaint.  (*See* Doc. 94, Plntf. Opp., 2:15-17, 4:8-11, 5:8-9, 6:7, 6:9-12, 7:5-9, 7:24-8:3, 8:12-14, 8:17-18.)  Because Defendants have not met their substantial threshold showing and have not provided adequate information concerning their claim of privilege or protection, CDCR's claim of privilege based on the official information privilege under federal law is denied.

### C. **Facially Overbroad & Undue Burden**

The scope of discovery under Rule 26(b)(1) is broad.  Discovery may be obtained as to any unprivileged matter "relevant to the claim or defense of any party . . ." Id.  Discovery may be sought of relevant information not admissible at trial "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.  However, discovery may be limited if it ". . . is unreasonably cumulative or duplicative," or can be obtained from another source "that is more convenient, less burdensome, or less expensive;" if the party who seeks discovery "has had ample opportunity by discovery . . . to obtain the information sought;" or if the proposed discovery is overly burdensome.  Fed. R. Civ. P. 26(b)(2)(i)(ii) and (iii).  When a discovery request takes the form of a third-party subpoena, the court may quash or modify a subpoena that "subjects a person to undue burden."  Fed. R. Civ. P. 45(c)(3)(A)(iv).

CDCR argues that Plaintiff's requests are facially overbroad and to respond would cause an undue burden on Warden Clark.  CDCR asserts that Plaintiff's requests could be interpreted to seek a wide range of possibly responsive documents.  (Doc. 87, Mot. to Quash, 6:22-24.)  Yet, the only evidence submitted by CDCR on this point is the litigation coordinator's declaration which merely states "the effort and expense necessary to comb through the many documents that may or may not be responsive to the SDT and then in turn redact all of the confidential personal

---

[8] Presumably this is based on their further arguments that Plaintiff's requests are facially overbroad and that locating responsive documents would amount to an undue burden.  However, both of these arguments are discussed and rejected in the immediately following section.

12

information of third parties in the documents will unduly burden CDCR and its employees, especially with respect to some of the broader categories of requested information." (Id., Cordova Decl., ¶ 7.) In opposition, Plaintiff cites cases from other jurisdictions supporting his argument that his requests should be allowed, even if burdensome or expensive, as long as they have any bearing on the case. CDCR replies that relevance is not the only consideration.

Rule 34(b) specifically requires that each request be addressed and that if the requested inspection is not allowed, an objection and the reasons for the objection "shall be stated." The objecting entity must state specifically how, despite the broad and liberal construction of federal discovery rules, each question is overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. Klein v. AIG Trading Group, Inc., 228 F.R.D. 418, 422 (D. Conn. 2005). Objections must be made with sufficient specificity in accordance with Rule 34; objections that are not sufficiently specific, such as statements that requests are overly broad, burdensome, or oppressive, are waived. Ramirez v. County of Los Angeles, 231 F.R.D. 407, 409 (C.D. Cal. 2005). Further, the responding party should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in the discovery documents. Mc Coo v. Denny's Inc., 192 F.R.D. 675, 694 (D. Kan. 2000).

Here, CDCR's objection of unduly burdensome and overbroad are not sufficiently specific or adequately explained. CDCR does not *specifically* address *any* of Plaintiff's requests, nor is it stated to which of Plaintiff's requests any of CDCR's objections apply; rather their objections and/or basis for moving to quash the SDT are merely stated in a very general manner. This is clearly insufficient to meet CDCR's burden on a motion to quash.

Further, large corporations and institutions, such as CDCR, are expected to have means for locating documents requested in legal matters. *See*, Meeks; A. Farber and Partners, Inc. v. Garber, 234 F.R.D. 186, 189 (C.D. Cal. 2006); National Ass'n of Radiation Survivors v. Turnage, 115 F.R.D. 543, 552 (N.D. Cal. 1987). This is particularly the case where the institution, such as CDCR is involved in legal actions on a regular basis (as is obvious upon even a cursory review of cases filed in this district) and where, as here, neither the Plaintiff's claims, nor the documents he seeks are out of the ordinary.

## IV. OBJECTIONS BY DEFENDANTS HILL, LOWDER, RAMIREZ, JIMINEZ, WHEELER, CURTISS, DIAZ, McALISTER, AND RODRIGUEZ[9]

Defendants objections (Doc. 88) are not well taken. Rule 45(c)(2)(B) provides that "[a] *person commanded to produce* documents or tangible things to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises – or to producing electronically stored information in the form or forms requested." (Emphasis added.)

Ordinarily, a party cannot object to a subpoena duces tecum served on a nonparty, but rather, must seek a protective order or make a motion to quash. Moon v. SCP Pool Corp., 232 F.R.D. 633, 636 (C.D. Cal. 2005) (*citing* Schwarzer, Tashima, & Wagstaffe, California Practice Guide: Federal Civil Procedure Before Trial, ¶ 11:2291 (2005 rev.); *see also* Pennwalt Corp. v. Durand-Wayland, Inc., 708 F.2d 492, 494 n. 5 (9th Cir. 1983)). The burden of quashing a subpoena duces tecum is generally on the person to whom the subpoena is directed. Sullivan v. Dickson, 283 F.2d 725 (9th Cir. 1960). However, that general rule is extended to parties where "the party claims some personal right or privilege with regard to the documents sought." Atlantic Inv. Management, LLC v. Millennium Fund I, Ltd., 212 F.R.D. 395 (N.D. Ill. 2002) (*quoting* Wright & Miller, Federal Practice and Procedure, 9A Civil 2d § 2459 at 41 (1995 ed.).

In their objections, while Defendants generally raised various privileges and personal privacy rights, they did not submit a required privilege log (as discussed above) for the Court to ascertain application of any privileges raised on a document by document basis. Accordingly, Defendants objections are overruled.

## V. *IN CAMERA* REVIEW and/or PROTECTIVE ORDER

CDCR requests the Court conduct an *in camera* review of any documents to be produced and, if any documents are to be produced, that a protective order under Rule 26(c) issue limiting the scope of the SDT and the use of any confidential information.

In his opposition, Plaintiff indicated that: (1) he seeks disclosure only of facts directly

---

[9] Defendants acknowledge that "Rodriguez has been dismissed as a defendant in this action" but consider that "there may be statements or personal information in the documents requested by the subpoena that should be objected to on her behalf." (Doc. 88, Objs., p. 1 n. 1.)

related to his case and that any information (personal or confidential) of any individual that has no direct relation to the July 30, 2003 incident at SATF, in Facility-C, Building 1 (as allegedly committed against Plaintiff by Defendant Clark) is neither requested nor needed (Doc. 94, Plntf. Opp., 2:15-17); (2) he does not seek to have any personal or confidential information of any CDCR employee or inmate disclosed and seeks only disclosure of facts directly related to the allegations of the Complaint (id., at 4:8-11); (3) he seeks only information from individuals whose identities have already been revealed and are part of the record in this case (id., at 5:8-9); (4) he seeks only to have facts directly related to this case disclosed (id., at 6:7); (5) he does not object to the editing of the requested documents so as to redact personal information therefrom as long as factual allegations are not redacted (id., 6:9-12); (6) he seeks disclosure of non-personal information (id., at 7:5-9); (7) he seeks documentation from witnesses whose identities have previously been revealed in this case to include findings of investigations into the subject of this case and that any confidential or personal information can be blacked out (id., at 7:24-8:3); (8) he seeks factual materials rather than deliberative and decision-making information (id., at 8:12-14); and (9) he does not seek to have any personal information disclosed (id., at 8:17-18).

Given these statements in Plaintiff's opposition, his requests can reasonably be construed and limited to seek only information that would fall under the exceptions to the official/governmental information privilege (i.e. communications or reports made after completion of the deliberative process, *see* NLRB, 421 U.S. at 151, and factual materials, *see* Mink, 410 U.S. at 87-88; Branch, 638 F.2d at 882; EEOC, 9 Empl.Prac.Dec. (CCH) P 9985 (E.D. Mo. 1973); Zeiss Stiftung, 40 F.R.D. at 327).  Further, Plaintiff's statements make it clear that he seeks only documents relating to the incident which occurred on July 30, 2003.

The Court is mindful of the fact that some of the documents responsive to the SDT may in fact contain information that, if turned over to an inmate, could seriously jeopardize the safety and security of both inmates and personnel within the institution.  Not wanting any untoward consequences to result from procedural ineptitude and, realizing the shared interests that arise since Defendants are CDCR employees, CDCR and Defendants are ordered to work together to locate documents responsive to the SDT.  They shall redact any confidential and/or personal

information (such as names of persons not previously disclosed in this action, identification numbers, addresses, photographs of prison personnel, and the like), being sure to leave all information as to the factual allegations and scenarios surrounding the incident which occurred on July 30, 2003, in SATF Facility C, Building 1 regarding Plaintiff's arm in the tray port and any actions taken on that same date when Plaintiff was subsequently take to the holding cage for the yard clinic. Copies of all such documents are to be served on Plaintiff within forty-five (45) days of the date of this order and are subject to the protective order issued concurrently herewith per Rule 26(c).

Plaintiff's claims upon which this action proceeds involve specific acts by named individual defendants. There are no claims in this action regarding any institutional procedures, processes, policies, or system wide responses. Accordingly, any documents of general application (such as post orders, emergency procedures, and the like which do not include factual information regarding the incident alleged in the Complaint) need not be reviewed or produced.

If CDCR and/or Defendants feel that documents responsive to the SDT exist which contain confidential and/or privileged information that cannot be adequately redacted, they shall submit a privilege log, complying with all requirements discussed herein delineating any such documents for consideration by the Court within forty-five (45) days of the date of this order. The Court will subsequently advise all concerned whether further information is required, whether documents should be submitted for an *in camera* review, or whether such documents should be produced directly to Plaintiff.

## VI. CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Non-party CDCR's Motion to Quash, filed on December 5, 2008, is DENIED;
2. The Objections filed by defendants Hill, Lowder, Ramirez, Jiminez, Wheeler, Curtiss, Diaz, McAlister, and Rodriguez on December 5, 2008, are OVERRULED;
3. Within forty-five (45) days of the date of this order, CDCR and Defendants are to locate and serve on Plaintiff copies of documents containing factual information

16

|  |  |  |
|---|---|---|
| 1 |  | regarding the events alleged in the Complaint that occurred on July 30, 2003 at |
| 2 |  | SATF, Facility C, Building 1, redacting all personal and/or confidential |
| 3 |  | information; |
| 4 | 4. | Withing forty-five (45) days of the date of this order, CDCR and Defendants are |
| 5 |  | to file a privilege log delineating all documents, responsive to the SDT, which |
| 6 |  | cannot be adequately redacted to preserve the safety and security of CDCR |
| 7 |  | personal, inmates, and/or facilities; |
| 8 | 5. | CDCR's request for an *in camera* review is taken under submission to be |
| 9 |  | addressed if necessary subsequent to review of any privilege log that is filed as |
| 10 |  | discussed in this order; |
| 11 | 6. | CDCR's request for a protective order is GRANTED in as much as any |
| 12 |  | documents ultimately produced to Plaintiff in response to the SDT discussed |
| 13 |  | herein will be subject to the protective order issued concurrently herewith; and |
| 14 | 7. | The Clerk shall SERVE a copy of this order upon Ken Clark, Warden of SATF, |
| 15 |  | P.O. Box 7100, Corcoran, CA 93212. |

IT IS SO ORDERED.

**Dated:  June 13, 2011**                                  /s/ Sandra M. Snyder
                                                          UNITED STATES MAGISTRATE JUDGE